

Signed/Docketed
July 13, 2015

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re ) | |
| ) | Case No. 10-20070 MER |
| ROBERT J. FORMANECK ) | |
| PAMELA R. FORMANECK ) | Chapter 13 |
| ) | |
| Debtors. ) | |

## ORDER

Gambling with a Chapter 13 discharge is a risky proposition, particularly where a material default is discovered in month fifty-eight of a confirmed Chapter 13 plan. This is the issue presented to this Court in the Chapter 13 Trustee's Motion to Dismiss, the Debtors' response thereto, and the briefs submitted by the parties.[1] After submission of the parties' briefs, the Court took this matter under advisement. The Court, having reviewed the record and all relevant pleadings, hereby makes the following findings and conclusions.

## BACKGROUND FACTS

The relevant facts are undisputed. The Debtors' primary residence is located at 9404 S. Shadow Hill Circle, Lone Tree, CO 80124 ("Residence"). The Residence is subject to a first priority lien in favor of Wells Fargo Home Mortgage ("Wells Fargo"). Pre-petition, the Debtors defaulted on their monthly payments to Wells Fargo.

On April 28, 2010, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. On December 17, 2010, the Court entered an Order[2] confirming the Debtors' Amended Chapter 13 Plan ("Confirmed Plan").[3] The duration of the Debtors' Confirmed Plan is sixty months, with the final payment due April 28, 2015. Section IV.B.1. of the Confirmed Plan provides for a cure of the $43,055 pre-petition arrears owed to Wells Fargo in connection with their

---

[1] *See* Docket Nos. 82, 87, 97 and 99. At the preliminary hearing in this matter, the parties agreed no evidence was necessary and requested to submit additional briefs only.

[2] Order Confirming Plan, Docket No. 45.

[3] Confirmed Plan, Docket No. 41.

Residence, and regular post-petition mortgage payments to be paid directly to Wells Fargo outside the Confirmed Plan beginning May 30, 2010.[4]

According to the parties, the Debtors completed all required monthly payments to the appropriate standing Chapter 13 Trustee under the Confirmed Plan, and the Trustee disbursed $43,055 to Wells Fargo for the pre-petition arrears. Contrary to the terms of Sections IV.B.1. and V.A., the Debtors failed to make regular post-petition mortgage payments directly to Wells Fargo after October 2012.

On April 29, 2014, the Trustee filed a Notice of Final Cure Payment.[5] After Wells Fargo responded, the Debtors filed their Objection to Wells Fargo's Statement in Response to Trustee's Notice of Final Cure Payment.[6] Notably, the Debtors' Objection states:

> Debtors object to the additional and superfluous statement that the Debtors currently have a post petition arrearage of $96,098.17. **Such a statement may lead one to believe that the Debtors have not been making house payments on their residence.**
>
> **Based upon information and belief from the Debtors' financial records, the Debtors were current through October of 2012 with mortgage payments.** Thereafter, the Debtors experienced difficulties in making regular payments to the mortgage company and maintaining the regular chapter 13 trustee payment.[7]

According to the Stipulation later approved by this Court, the Debtors and Wells Fargo later agreed the total amount of post-petition arrears owed to Wells Fargo through February 2015, is $109,022.42.[8] During the pendency of the Debtors' bankruptcy case, Wells Fargo did not seek relief from the automatic stay to

---

[4] Confirmed Plan, at Sec. IV.B.1. In addition, Section V.A. provides the monthly mortgage payment to Wells Fargo, including taxes and insurance, is $4,536.38 for months 1-23; $4,708.06 for months 24-35; $4,879.74 for months 36-47; and $5,051.42 for months 48-60. *Id.* at Sec. V.A. *See also* Debtors' Amended Schedule J filed November 9, 2010 (Docket No. 40).

[5] Docket No. 63. *See* FED.R.BANKR.P. 3002.1.

[6] Docket No. 64.

[7] Docket No. 64, at ¶ 2-3 (emphasis added).

[8] Docket Nos. 89 and 90.

pursue its state law rights with respect to the Residence. Furthermore, the Debtors never sought any modification of their Confirmed Plan.

## DISCUSSION

Section 1307(c)(6) of the Bankruptcy Code provides:

(c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

. . .

(6) material default by the debtor with respect to a term of a confirmed plan[.][9]

Where there is a material default, "dismissal or conversion is not automatic, but rather a matter of the Court's discretion."[10]

On February 6, 2015, the Trustee filed his Motion to Dismiss, seeking dismissal of the Debtors' case for two reasons. First, the Trustee asserts dismissal is proper under 11 U.S.C. § 1307(c)(6) because the Debtors' failure to make post-petition payments directly to Wells Fargo is a "material default" by the Debtors with respect to a term in their Confirmed Plan. According to the Trustee, "[t]he direct pay mortgage was in fact the most material part of this plan, the mortgage payment being over three times the amount of the trustee plan payment."[11] Second, and as independent grounds, the Trustee asserts dismissal is in the best interests of creditors and the estate for "cause" under § 1307(c) because the "Debtors failed to notify anyone, including the [Trustee] that they were not making their monthly mortgage payments, thus defaulting

---

[9] 11 U.S.C. § 1307(c)(6). Unless otherwise noted, all statutory references in the text refer to Title 11 of the United States Code.

[10] 7 COLLIER ON BANKRUPTCY 1307-18, ¶ 1307.04[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014) (citing *Roberts v. Boyajian (In re Roberts)*, 279 B.R. 396 (1st Cir. BAP 2000); *In re Green*, 64 B.R. 530 (9th Cir. BAP 1986)).

[11] Trustee's Brief, Docket No. 99, at Sec. III.

under their [Confirmed Plan]."[12] For these two reasons, the Trustee seeks entry of an order dismissing this bankruptcy case.

In response, the Debtors admit a material default with respect to Wells Fargo, stating:

> The Debtors do not deny that Wells Fargo has the ability to request relief from the automatic stay, nor do they deny the Well Fargo has the ability to request a meaningful remedy under 11 U.S.C. §1307 and dismiss the Debtors' case for a default in the plan as such failure to pay the current mortgage payments is material to Wells Fargo.[13]

The Debtors also agree the Trustee has legal standing to prosecute the Motion to Dismiss.[14] However, the Debtors allege their default is not "material" with respect to the Trustee or unsecured creditors, and in the absence of any harm to the Trustee's administration of the Confirmed Plan, only Wells Fargo may file a motion to dismiss. Relying on § 1327(b), the Debtors also argue their post-petition income vested in the Debtors after confirmation, and they may "choose how to utilize their vested assets for post-petition payments."[15] In other words, the Debtors argue their failure to make any monthly post-petition mortgage payments to Wells Fargo is no concern of the Trustee and a request to dismiss by the Trustee is improper. The Court disagrees.

A. **The Debtors' Failure to Make Post-Petition Payments Directly to a Secured Creditor Outside a Confirmed Plan Constitutes a Material Default With Respect to a Term of the Confirmed Plan**

Sections IV.B.1. and V.A. of the Confirmed Plan provide for sixty post-petition mortgage payments to be made directly to Wells Fargo.[16] Section 1327(a) provides the provisions of the Confirmed Plan are binding on the Debtors.[17] The Court concludes these binding provisions are "terms" of the

---

[12] *Id.*

[13] Debtors' Brief, Docket No. 97, at ¶ 18.

[14] Debtors' Brief, Docket No. 97, at ¶ 5.

[15] *See* Debtors' Brief, Docket No. 97, at p. 1.

[16] Confirmed Plan, at Secs. IV.B.1. and V.A. (providing the monthly payment amount is $4,536.38 for months 1-23; $4,708.06 for months 24-35; $4,879.74 for months 36-47; and $5,051.42 for months 48-60).

[17] *See* 11 U.S.C. § 1327(a).

Confirmed Plan.[18]  The Debtors never filed a motion to modify their Confirmed Plan to address the increasing post-petition claim of Wells Fargo, and it is undisputed the Debtors failed to make direct payments outside the Confirmed Plan to Wells Fargo after October 2012.  Therefore, the Court finds the Debtors' failure to make direct payments to Wells Fargo for over thirty months, which is contrary to the terms of the Confirmed Plan, establishes a material default of the Confirmed Plan.[19]

Further, the Debtors' arguments regarding fairness are unpersuasive. The Confirmed Plan executed by the Debtors reflects their conscious promise to pay Wells Fargo outside the plan pursuant to their mortgage.  This intent to repay Wells Fargo was also identified and reflected in the Debtors' Amended Chapter 13 Statement of Current Monthly Income and Disposable Income Calculation.[20]  Rather than execute the terms of the Confirmed Plan, the Debtors chose to withhold over thirty months of post-petition earnings promised to Wells Fargo as direct mortgage payments, and failed to amend or adjust their payments to unsecured creditors to make up for the thirty month windfall.  On the one hand, the Debtors want a fixed distribution to unsecured creditors and unbridled discretion to utilize post-petition income as they see fit, and on the other hand, they want a Chapter 13 discharge.  To allow the Debtors to now have their cake and eat it too would be unfair.

On these facts, the Trustee seeking dismissal versus Wells Fargo seeking dismissal is a distinction without a difference.  The Debtors admit a material

---

[18]  As Judge Porfilio previously observed:

> . . . a dismissal can be predicated upon a "material default by the debtor with respect to a term of a confirmed plan." (emphasis added)  Thus, Plaintiff's theory can be supported only if treatment of the Plaintiff's debt is not contained in a "term" of the plan.
>
> I think the contrary is obvious.  The plan refers to Plaintiff's debt and states that it will be paid "outside the plan," thus the amount and manner of the payment are clearly a provision of the plan. The Debtors' utilization of the phrase "outside the plan" does not put the treatment of the claim beyond the plan simply because payment is not to be made through the Chapter 13 Trustee. The payment so provided is as much a "term" of the plan as any of its other provisions.

*Arvada 1st Indus. Bank v. Richardson (In re Richardson)*, No 81 K 221, at *1-2 (Oct. 29, 1981), *reprinted in In re Garcia*, 42 B.R. 33, 34 (Bankr. D. Colo. 1984).

[19]  The Debtors admit they defaulted on these post-petition payments to Wells Fargo, and the default was material.  *See* Debtors' Brief, Docket No. 97, at ¶ 18.

[20]  Docket No. 37.

default of their Confirmed Plan, but assert this default does not harm the Trustee or any creditors other than Wells Fargo.  The glaring concern with the Debtors' position is they failed to disclose or even address how they have been spending their income allocated for direct mortgage payments ranging from $4,711.38 to $5,061.38 per month over the latter half of their commitment period.  Although the missed payments are reflected in the $109,022.42 post-petition arrears owed to Wells Fargo, the Debtors have not accounted for any of these funds.  At the outset of their case, the Debtors made the choice to retain their Residence and confirm a plan committing sixty months of post-petition income to mortgage payments.  The Confirmed Plan does not provide a 100% return to unsecured claims, and provides a *pro rata* split of only $18,618 to unsecured creditors with any remaining deficiency for allowed unsecured claims to be discharged.[21]  Had the Debtors sold or surrendered their Residence, they would have had the ability to increase monthly plan payments and the overall distribution to unsecured creditors.  To state it plainly, the Court finds the material default in this case clearly harms the other creditors in this case.

Even if the Debtors wanted a Chapter 13 discharge, the Debtors could not receive a discharge as a result of the material default.  Under § 1328(a), a Chapter 13 discharge in favor of the Debtors is conditioned on "completion by the debtor[s] of all payments under the plan . . . ."[22]  This Court adopts the uncontroverted reasoning and conclusions of other courts determining payments required to be made directly to creditors under a confirmed chapter 13 plan are "payments under the plan," as that term is used in § 1328(a).[23]  Applying this reasoning, the Court finds the payments the Debtors promised to make directly to Wells Fargo are "payments under the plan" and the Debtors' failure to make those payments prohibits entry of their discharge in Chapter 13.  This prohibition makes completion of the Confirmed Plan impossible, thereby frustrating the Trustee's administration and closing of this case.  Thus, the Trustee, the estate and the other creditors are harmed by the Debtors' material default of the Confirmed Plan.

Based on the foregoing, the Court concludes the Debtors' failure to make over thirty post-petition payments directly to Wells Fargo establishes a material default with respect to terms of the Confirmed Plan which harms both creditors

---

[21]   Confirmed Plan, at Sec. I.B.

[22]   11 U.S.C. § 1328(a).

[23]   *See In re Gonzales*, 2015 WL 3611136, at *3 (Bankr. D. Colo. June 9, 2015) (collecting cases) ("All courts that have examined the question of whether payments required to be made directly to creditors under a confirmed chapter 13 plan are "payments under the plan," as that term is used in § 1328(a), have answered the question in the affirmative.").

and the estate.  Indeed, other courts examining this precise issue, including two other divisions of this Court, concluded a material default of post-petition payments directly to a secured creditor warranted dismissal or conversion under § 1307(c)(6), even though the debtors made all required payments to the Chapter 13 trustee.[24]  Therefore, this Court will grant relief under § 1307(c)(6).

### B.   Dismissal Versus Conversion to Chapter 7

Section 1307(c)(6) provides after a material default under the terms of a confirmed plan is established, the determination of dismissal or conversion rests within the sole discretion of the Court.[25]  Thus, the only remaining issue is whether, in this Court's discretion, the Debtors' material default warrants dismissal or conversion under § 1307(c)(6), turning on which path is in the best interests of creditors and the estate.

Here, the Trustee seeks only dismissal of this case, and the Debtors did not request conversion.  On the facts of this case, the Court finds the most appropriate way to prevent harm to all creditors is to dismiss this case.  Although the Debtors made all required payments to the Trustee and Wells Fargo failed to seek relief from stay to enforce it state law rights with respect to the Residence, the Debtors failed to pay over $100,000 worth of post-petition payments in violation of their Confirmed Plan and provided no evidence, or even allegations, as to where and how all of the income earmarked for these payments was used.  The Debtors cannot obtain a discharge of their debts in Chapter 13, and rewarding the Debtors with a discharge in Chapter 7 for their failure to comply with the Confirmed Plan and the Bankruptcy Code is inappropriate.  The Debtors' gamble did not pay off, and the penalty for putting their discharge at risk is they will not receive this benefit.  Therefore, the Court determines dismissal is in the best interests of all creditors and the estate due to the material default of the Confirmed Plan evidence by repeated missed post-petition payments to Wells Fargo.

### CONCLUSION

The Debtors' failure to make any direct payments to Wells Fargo establishes a material default under § 1307(c)(6), and the Court concludes dismissal rather than conversion to Chapter 7 is in the best interests of creditors and the estate.  As set forth above, the Court need not reach the Trustee's

---

[24] *See id.*; *Roberts*, 279 B.R. at 399-400; *In re Daggs*, Case No. 10-16518-HRT, Docket No. 49 (Bankr. D. Colo. Jan. 6, 2014) (unpublished); *In re Furuiye*, Case No. 10-15854-SBB, Docket No. 85 (Bankr. D. Colo. April 7, 2014) (unpublished).

[25] *See* sources cited *supra* note 9.

second argument that failure to notify the Trustee of the material default alone establishes cause for dismissal under § 1307(c). Accordingly,

IT IS ORDERED the Chapter 13 Trustee's Motion to Dismiss (Docket No. 82) is GRANTED. A separate order dismissing this Chapter 13 case for cause under 11 U.S.C. § 1307(c)(6) shall enter.

Dated July 13, 2015.                    BY THE COURT:

_____
Michael E. Romero, Chief Judge
United States Bankruptcy Court